Thank you, Your Honor. Jay Allen Eisen for the Rice Corporation. Your Honors, there are two main questions we believe are presented. The first is whether paragraph 18 of the party's agreement should be enforced with a mandatory forum selection clause. And the second is whether enforcing paragraph 18 and forcing the Rice Corporation to trial in Iraq would be unreasonable or unfair. I'm kind of interested in that second issue. You know, you folks made your bed, but you don't want to lie to it anymore, and you're claiming that things are so much different now than they were, was it 2004 or 2005? Five. Okay. And that because of that there's a difference now, and Iraq is not what it was in 2005. Do you really seriously maintain that there's a difference now than in 2005? All of the information that we've been able to gather and that we presented to the district court is that Iraq's judiciary is, in a word, a shambles. What information do you rely upon to support that notion that the judiciary is worse off today than it was before Saddam Hussein? I'm not saying that it was worse off than it was before Saddam Hussein. I'm saying that the information that we have shows that it is very bad. Can you just give me some absolute, you know, specifics about that? Yes. We have the declaration of Mr. al-Mukhtar, who goes through very carefully what the state of the judiciary is. I'd point out that we recently notified the court of new authority on this issue, the Archer Daniels Midland case. But does it seem logical to you that the judiciary is worse off now that Saddam Hussein is no longer running the show than it was before? I mean, doesn't it seem counterintuitive to some extent? Well, we know that the judiciary was essentially disassembled and reassembled hastily by the coalition. And according to Mr. al-Mukhtar, the judiciary still remains subject to outside influence, executive influence. Corruption is rife. I want to share this with you. It's not part of the record. I'm not going to rely upon it in terms of my deliberations. But just as a point of some curiosity, that I happened to have met in Cairo at a conference two years ago the chief judge of the Iraq Supreme Court, Judge Mahmoud. And I was charmed by the fact that he told me that they were operating under wraps when Saddam was in power and they saw themselves as being under a temporary injunction, which has now been lifted. And he was very high on the fact that the judiciary was really on the rebound, together with the other six judges who were there at the conference. Now, that's not part of the record. Sure. But, I mean, I just used that, you know, to tell you why I was curious to ask you these questions. Stand, Your Honor. As I was saying in the Archer Daniels Midland case, Judge Rakoff in the Southern District of New York accepted Mr. Al-Mukhtar's declaration, almost identical to ours, that there had been a total collapse of the judiciary system since the American invasion, that the judges are overwhelmed, insufficiently trained, and that there is unprecedented corruption. That is the situation that we now face. Why was it different in 2005 when you agreed to go to Iraq? I don't think the question is whether it's different. The question is whether it is unreasonable or unfair for us to submit to that kind of system. It's not a question of is it different now than it was then. But you didn't think it was unfair back in 2005, so I'm a little puzzled by your position here. That kind of issue, I think, comes up every time someone challenges a form selection clause. We have, as you know, numerous cases on the issue, many involving major national and international companies. There's no concept of estoppel here that should apply in your situation when you openly agreed to do this and now you've changed your position? I've never seen that happen in any of the reported cases, Your Honor, and many of them find that. Maybe no court ever thought about it before. That may be true, Your Honor. I haven't seen it argued in this case either or briefed. Well, I guess what is argued and what is brief is that the standard of review is abuse of discretion, correct? Well, that's a bit confusing, Your Honor. There is the statement that the standard of review is abuse of discretion. There's also the statement in Murphy that because this is a 12b-3 motion, we treat it as if it were summary judgment and review it the same way, that is construing the evidence most favorably in favor of the Rice Corporation, drawing all inferences in the Rice Corporation's favor. Well, you can draw all the inferences you want in favor of the Rice Corporation, but I don't find anything that contradicts the cases that suggest this is an abuse of discretion, and I don't find anything that contradicts that you have a heavy burden to show what you're trying to do here. So in really coordination with my colleague's questions here, since you put together that you were going there in 2005, you had full knowledge or whatever knowledge you had of what was going on in 2005, and now you come in and say, well, I don't want to go there anymore. And yet I think you have a heavy burden to suggest, even in those situations, that something is different. You just can't come in and say, oh, it's terrible. But if you agree to something before and it was that way then, then one has a tough time on an abuse of discretion basis to suggest that you shouldn't go now unless you can say it's different. As we read cases such as the Brevin, that's not the way the Court looks at it. The question is, particularly under Carnival Cruise Lines, would it be unfair or unreasonable? It isn't would it be more fair, less fair now than it was then. It is a straight, apparently objective test. I appreciate that you could quote the standard of review for what the judge should suggest, but again, on an abuse of discretion analysis, and you bearing the heavy burden, I'm having a tough time saying, oh, judge, you abused what you had a discretion to do. Well, the cases also say that we interpret these contract clauses, these clauses, as a contractual matter, which becomes a question of law. And I don't think that the district judge has discretion to effectively violate the law. He applied the law. But he didn't think that you should get that based on what he applied the law to the facts in front of him. You can't say he didn't apply the law. He applied exactly the law we have to apply today. That's correct. And as we see the case, he did not apply the law correctly. This is, as we see it, a permissive clause, not a mandatory clause. And the judge missed it when he said this is mandatory. Under the cases that we've cited, the kinds of language that we've given you that have come from other cases, this is not a mandatory form selection clause. It is permissive at best. Well, I guess tell me how you would read paragraph 18 any other way than mandatory. I would read it in connection with cases such as the K&V case. Doesn't it say shall be settled by a particular court? Doesn't it say shall be final and conclusive and binding? It does. This Court in Hunt-Wesson said that shall does not make it mandatory. That is not enough to do it. There must be language that makes it clearly exclusive and excluding any other jurisdiction from hearing it. That's what the test is that the courts have articulated. In, for example, in the Northern California District Council case, which came from this Court, the provision was that arbitration decisions, quote, shall be enforceable by a petition filed in the Superior Court of the City and County of San Francisco. This Court said that is a permissive form selection clause, not mandatory. That's very similar to what we have here as we see it. And it didn't reference the fact that it would be the exclusive jurisdiction, though, in that case. The concept of this being exclusive jurisdiction was missing, right? That's correct. It says nothing about exclusive jurisdiction in this case either. We have that here, that this shall be the place where there should be jurisdiction, right? That's correct. In the K&V case, which we've cited to you from the Tenth Circuit, the statement was jurisdiction for all and any disputes arising out of or in connection with this agreement is Munich. The Court said that's permissive. That is not mandatory. It does not have the language making it exclusive. It does not say, as in Carnival Cruise Lines, it does not say that any disputes and matters whatsoever arising under this contract shall be litigated, if at all, in and before a court located in the State of Florida, USA, to the exclusion of courts of any other State or country. You say that's what's missing, the words to the exclusion of other courts, right? That's what's missing here? Even the word only. Even the word only. That's why it is a permissive provision, not mandatory. And with the Court's permission, I have the balance of my time for rebuttal. You have no time. Thank you. Thank you, Your Honor. So you heard your adversary say the word only is missing or a phrase that says to the exclusion of any other place. Do you agree with that? No. The entire clause, without bothering with misspelling, says that only is missing  or a phrase that says disputes shall be settled by Iraqi court according to Iraqi laws and regulations, and their decision shall be final and conclusive and binding on both parties. I think the Rice Corporation is asking for a standard that basically says you also have to add the words, and we really, really mean it. If this isn't a mandatory clause, I don't know what is, because you can't strip out the word shall be final and conclusive and binding on both parties. Where in Iraq are they supposed to litigate? I mean, you can go to Kirkuk, I guess, and there are different regions, right? How about the fact that there's no specificity about whether it should be in Baghdad or some other place in Iraq? Does that trouble you? Well, the courthouse does not need to be expressly stated in the contract. For example, in Phillips v. Audioactive, 494F3rd 378F382, a Second Circuit decision in 2007, the court of appeals enforced a forum selection clause concerning the party's breach of contract claim. That forum selection clause simply stated that, and I'm quoting, the validity, construction, and effect of this agreement and any or all modifications hereof shall be governed by English law, and any legal proceedings that may arise out of it are to be brought in England. That's all it said. It was enforced. Every lawyer in England knows what courthouse to go to, and every lawyer in Iraq knows to go to the first instance civil court in Baghdad to sue a State-owned enterprise, such as the Green Board of Iraq. I'd also like to call to the attention of the Court this Court's recent decision in Polymaster at 623F3rd 832, 2010. The clause in that case, which this Court held was effectively a forum selection clause and therefore presumably valid, provided that disputes, quote, should be settled by means of arbitration at the defendant's site, close quote. And this Court held that a party's counterclaims had to be arbitrated in Belarus despite the inefficiency of having claimant's claims arbitrated in the defendant's site and counterclaims arbitrated in the counterclaim defendant's site. In effect, two separate proceedings instead of one. That was the forum selection clause bargain in Polymaster that the Court enforced. And the Green Board of Iraq and the Ministry of Trade of the Republic of Iraq similarly asked this Court to enforce the party's forum selection bargain in our case. Now, I'm not trying to provoke a chronological cringe, but this case does recall to mind an observation that now Chief Judge Kaczynski made approximately 22 years ago in his concurrence in the unrelated case of Oki, America, 872F2nd 312 at 315. In Oki, America, Judge Kaczynski summarized as follows the motivation for a party to try to leap over the text of the contract at issue. Quote, the potential rewards are large, the rules nebulous, and the parties unconstrained by such annoying technicalities as the language of the contract to which they once agreed. Well, it's pure music. Well, we think that's the motivation. As I recall, the law clerk on that case was Judge Ikuta or what is now Judge Ikuta, so maybe that explains it. A very good law clerk in a case can sometimes result in memorable lines. But I think we understand your position. Thank you. Thank you, Your Honor. The case is argued. We'll stand some minutes.
judges: Block, Kozinski, Smith N. R.